**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

STEVIE C. GREATHOUSE and
MAXINE DEVONA GREATHOUSE,
Husband and Wife,

        Plaintiffs,

vs.                                        Case No. 5:06cv2-RS-AK

CECO CONCRETE CONSTRUCTION,
L.L.C.

        Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before me is Defendant's Motion for Summary Judgment (Doc. 69).

## BACKGROUND

Plaintiff Stevie Greathouse was a crane operator employed by Brasfield and Gorrie, LLC, the general contractor for a condominium construction project in Santa Rosa Beach, Florida. Defendant Ceco Concrete Construction, LLC ("Ceco"), was a subcontractor hired to perform concrete work for the project.

On June 17, 2004, Greathouse, at the direction of Ceco employees Jose Gonzales and Martin Cisneros, was attempting to lift a concrete load with his 240-ton crane. Greathouse had successfully lifted the same load on thirteen occasions during the course of the project. Gonzales and Cisneros were responsible for preparing the load and for signaling to Greathouse, who was unable to view the load from the crane, that it was freely suspended and ready for lifting.

On that day, however, the load became lodged in an elevator shaft. Gonzales and Cisneros had twice attempted to free the load from the shaft and on both occasions

had signaled to Greathouse that the load was ready for lifting. On both attempts, however, the crane's efforts to lift the load were unsuccessful. Greathouse, sensing on both occasions that the load was snagged, stopped lifting and radioed Gonzales and Cisneros that the crane was unable to raise the load. Following each fruitless effort, Gonzales and Cisneros labored for approximately thirty to forty minutes to dislodge the load.

Then tragedy struck. Gonzales and Cisneros directed Greathouse to raise the load for a third time. Once again, Greathouse's efforts were futile. Sensing that the load was still wedged in the shaft and immovable, Greathouse attempted to halt the lifting actions of the crane. This time, however, Greathouse was unable to stop lifting before the crane collapsed.

Portions of the crane's superstructure penetrated the cab and amputated Greathouse's left foot above the ankle. Both Gonzales and Cisneros also were injured, Cisneros suffering a fractured right leg that reduced the length of his leg by three to four inches. Brasfield and Gorrie, LLC, has provided workers' compensation benefits to Greathouse under Fla. Stat. § 440.01 et seq. Plaintiffs seek additional recovery from Ceco.

The parties agree that Ceco is immune from liability under Florida's workers' compensation statute unless the facts support a finding that Ceco was "grossly negligent" and that such gross negligence was the "major contributing cause of the injury." See Fla. Stat. §§ 440.10(1)(e) & 440.11. Greathouse alleges that Ceco was grossly negligent and that its gross negligence was the major contributing cause of his injuries for the following reasons:

> [1.] By failing to accurately advise Plaintiff of the correct load on the crane that would be encountered in lifting the concrete form, recognizing that inaccurate load information could overload and collapse the crane;
>
> [2.] By providing riggers and flagmen who were unskilled or untrained in the performance of their duties, recognizing that improper lift signals could overload and collapse the crane;
>
> [3.] By CECO employees having signaled Plaintiff to lift the

>
> subject load on two occasions previous to the subject accident, and on such occasions knew or must have known that the concrete form was stuck and could not be lifted, and that such lift signal could overload and collapse the crane;
>
> [4.] By CECO employees having signaled Plaintiff that it was safe to lift the concrete form several times when in fact it was obviously not safe and freely suspended in that it was continuously stuck when Plaintiff attempted to lift it, a fact of which CECO knew or must have known, and a condition that could overload and collapse the crane;
>
> [5.] By adjusting the slip form that was designed to allow the form to be sufficiently collapsed away from the cured concrete walls of the elevator shaft, but which CECO employees failed to properly adjust, knowing that such could overload and collapse the crane;
>
> [6.] By failing to properly flag the load to the Plaintiff, which itself CECO knew could overload and collapse the crane;
>
> [7.] By knowingly failing to remove obvious impediments to the form's removal (snap ties, rebar and slurry) as a freely suspended load, knowing that such conditions could overload and collapse the crane operated by Plaintiff; and
>
> [8.] By failing to properly calculate the weight of the form and to post that weight on the form, knowing that an overload could result and collapse the crane it was operating.

(Doc. 65-3:5-6 ¶ 21.)

Plaintiffs contend that Ceco knew or should have known that each of these failures could have caused the crane to collapse and that the totality of these actions "constituted a conscious indifference to the likelihood that [Greathouse] might or would be injured." (Doc. 65-3:6 ¶ 22.) Greathouse's wife, Plaintiff Maxine Greathouse, also seeks compensation from Ceco for loss of her husband's consortium. Federal jurisdiction is based on diversity.

Ceco's motion for summary judgment contends that Plaintiffs have failed to demonstrate gross negligence by Ceco as a matter of law. Plaintiffs protest that a triable issue of fact exists on the question of whether Defendant was grossly negligent.

Both parties argued their positions at the pretrial conference on February 13, 2007.

## ANALYSIS

### A. The Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton, 965 F.2d at 998 (citing Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251, 106 S. Ct. at 2512. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B

Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)).  However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 251, 106 S. Ct. at 2511).

If the movant satisfies its initial burden under Rule 56(c) by demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).  Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton, 965 F.2d at 998 (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S. Ct. at 2513 (citing Adickes, 398 U.S. at 158-59, 90 S. Ct. at 1609).  In light of the summary judgment standard, I will apply the relevant substantive law to the facts of the case.

**B.  Gross Negligence**

The sole issue is whether a reasonable trier of fact could conclude that Ceco was grossly negligent.  Gross negligence has been well-defined by Florida courts, and its definition is not disputed by the parties.

The Supreme Court of Florida has defined "gross negligence" as "an act or omission that a reasonable, prudent person would know is likely to result in injury to another." Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 793 n. 17 (Fla. 2004) (citations omitted).  The Eleventh Circuit, quoting Florida decisional law, has stated that "[t]o hold a party liable for gross negligence, [one] must find that the defendant had knowledge of the existence of circumstances which constitutes a 'clear and present

danger' and yet still undertakes 'a conscious, voluntary act or omission . . . which is likely to result in injury.'" Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc., 206 F.3d 1373, 1377 (11th Cir. 2000) (quoting Sullivan v. Streeter, 485 So.2d 893, 895 (Fla. 4th DCA 1986)).  Reduced to its elements then, gross negligence requires the following:

> 1. A composite of circumstances which, together, constitutes an 'imminent' or 'clear and present' danger amounting to more than normal and usual peril;
>
> 2. A showing of chargeable knowledge or awareness of the imminent danger; and
>
> 3. The act or omission complained of must occur in a manner which evinces a 'conscious disregard of consequences,' as distinguished from a 'careless' disregard thereof (as in simple negligence) or from the more extreme 'willful or wanton' disregard thereof (as in culpable or criminal negligence).

Kline v. Rubio, 652 So.2d 964, 965 (Fla. 3d DCA 1995) (quoting Hoyt v. Corbett, 559 So.2d 98, 100 (Fla. 4th DCA 1990); Glaab v. Caudill, 236 So.2d 180, 183-84 (Fla. 2d DCA 1970)), rev. denied, 569 So.2d 1278 (Fla. 1990).  The Glaab court exemplified the boundary separating ordinary negligence from gross negligence:

> [I]t's logical to assume that at some point along the line in a potential gross negligence situation the composite of circumstances or conditions will present a risk of grave injury which a rational person of mature judgment is simply unwilling to assume.  On the lower extreme, to illustrate, negotiating a sharp curve at twenty mph, with chargeable awareness that nine hundred ninety-nine out of a thousand cars safely do so, would unquestionably be a minim of risk; and taking such a risk, we can say, would not be negligence at all.  As speed would increase, however, so of course would the risk, until a point is reached where an accident or injury, as a consequence of careless inattention, oversight or error in judgment, is foreseeably more than a mere possibility.  Imprudence at this point would be a careless disregard of danger; and it can be said then, we think, that this point would be the predicate for ordinary negligence.  But on the high side of a potential gross negligence situation, negotiating the same curve at, say fifty mph, with chargeable awareness that twenty-five per cent of the cars do not make it at that speed, might well be a risk a

> person of mature judgment wouldn't consciously and willingly take (except as might be required in an emergency) notwithstanding that he has a better than 50-50 chance of making it. At this point in the spectrum, we therefore think that a driver should be particularly and keenly alerted to caution in approaching that curve at fifty mph. If regardless of the apparent risk, and regardless of the particular alertness called for, a driver voluntarily and consciously attempts to take that curve at fifty mph a jury might very well think he evinced a 'conscious disregard of consequences' to the extent that he knew such action 'would probably and most likely' result in a serious accident.

Glaab, 236 So.2d at 184.

In assessing the sufficiency of the evidence for gross negligence, I am also guided by decisions from the Supreme Court of Florida which require "strict and narrow" interpretations of the exceptions to the "broad exclusive remedy provisions" of Florida's Workers' Compensation Law. See Taylor v. Sch. Bd., 888 So. 2d 1, 5 (Fla. 2004) (citing Samara Dev. Corp. v. Marlow, 556 So. 2d 1097, 1100 (Fla. 1990)).

> [The workers' compensation statute] was meant to systematically resolve nearly every workplace injury case on behalf of both the employee and the employer.
>
> A contrary holding giving wide breadth to the rare exceptions to workers' compensation immunity would merely erode the purpose and function of the Workers' Compensation Law as established by the Legislature.

Bombay Co. v. Bakerman, 891 So. 2d 555, 556-57 (Fla. 3d DCA 2004) (quoting Taylor, 888 So. 2d at 6).

Here, Plaintiffs have failed as a matter of law to demonstrate that Ceco was grossly negligent. In particular, Plaintiffs have not established (1) an "imminent" or "clear and present danger" that the crane would collapse; (2) chargeable knowledge or awareness by Ceco that the crane would collapse; and (3) a voluntary act or omission by Ceco which evinces a conscious disregard for the likelihood that Greathouse would be injured.

### 1. "Imminent" or "Clear and Present Danger"

Plaintiffs have failed to demonstrate the existence of an "imminent" or "clear and present danger" that the crane would collapse. Greathouse testified in his deposition that he had lifted an identical load with the same crane thirteen times previously during the project without incident. (Greathouse Dep., Doc. 69-5, Ex. E:48, line 5.) In addition, Greathouse conceded that it was not unusual for the load to become "stuck" but that it would come "right loose" when Ceco employees "kept working with it." (Greathouse Dep., Doc. 69-5, Ex. E:48, lines 7-14.) In fact, immediately before the accident, Greathouse had twice attempted to lift the load but was unsuccessful because the load was wedged in the elevator shaft. (Greathouse Dep., Doc. 69-5, Ex. E:50, lines 23-25; 51, lines 1-6.) Notably, on neither of these attempts did the crane collapse. The accident occurred only on the third attempt. Greathouse admitted that he was aware that the crane was failing to lift the load on all three occasions. (Greathouse Dep., Doc. 69-5, Ex. E:50, lines 24-25; 51, lines 4-6, 9-12.) On two of those instances, except for the third when the accident occurred, Greathouse was able to halt the lifting action of the crane. (Greathouse Dep., Doc. 69-5, Ex. E:50, line 25; 51, line 5.)

Based on these facts, I find that a jury could not reasonably infer that an "imminent" or "clear and present danger" existed that the crane would collapse on its final attempt at lifting the load. Instead, the inference most favorable to Plaintiffs is the following extrapolation based on the outcomes of the previous two attempts which did not result in collapse or injury: that the crane was simply incapable of lifting the load on its final attempt because the load was once again snagged.

The facts do not permit the additional inferential leap urged by Plaintiffs that the crane was likely to collapse. Plaintiffs have introduced absolutely no evidence that the likely result of a 240-ton crane's futile efforts to lift a load ensnared on construction material is the collapse of a portion of that crane and injury to its operator.[1] In fact, it is

---

[1] Plaintiffs offer the deposition testimony of David MacCollum, presumably an expert, in support of their contention that the crane was likely to collapse. Mr. MacCollum stated that "The hazard of overloading of cranes is at the top of the list when

quite foreseeable that a load might become lodged during the lifting process. Greathouse himself testified during his deposition that such an occurrence is not unusual. (Greathouse Dep., Doc. 69-5, Ex. E:48, lines 6-14.) Yet Plaintiffs identify no other instance, except for the single incident involving the accident, when a crane has collapsed because it was attempting to lift a load that was not freely suspended. See Fleetwood Homes of Fla. v. Reeves, 833 So. 2d 857 (Fla. 2d DCA 2002) ("In this case, if anything, the numerous successful performances of the challenged procedure show that a risk of accident was far from imminent. This is not a case in which the employer continued to use the procedure after earlier mishaps . . . ), quashed and remanded on other grounds, 889 So. 2d 812 (Fla. 2004). Thus, while it *may* indeed be completely true that such a collapse is likely to occur, judge and jury are ill-equipped to so infer absent evidentiary support, none of which has been provided by Plaintiffs.

### 2. Chargeable Knowledge or Awareness

Plaintiffs have also failed to establish that Ceco knew, should have known, or was aware of any imminent or clear and present danger of crane collapse. Ceco was aware that Greathouse had successfully lifted the load from the elevator shaft without incident numerous times prior to the accident. Greathouse and Ceco knew that the load would sometimes become lodged. Not once, until the accident, did the crane collapse when attempting to lift an immovable load. See Courtney v. Florida Transformer, Inc., 549 So.2d 1061, 1065 (Fla. 1st DCA 1989) ("[T]he fact that such conduct had occurred on prior occasions, without fatal consequences, creates an element of doubt concerning the employees' knowledge of the likelihood of imminent injury."). Greathouse himself testified in his deposition that the load would come "right loose" when the Ceco employees "kept working with it." Cisneros and Gonzales labored to free the load three times immediately preceding the accident. Indeed, while their efforts were

---

it comes to the cause of crane failure." (MacCollum Dep., Doc. 71-13, Ex. M:11, lines 4-6.) MacCollum did not explain and Plaintiffs sought no further clarification on what MacCollum meant by "crane failure." Notably, MacCollum did not state that overloading a crane is likely to cause that crane to *collapse* or use a similar term from which one could reasonably infer that the crane was likely to collapse.

unsuccessful, the crane did not collapse until the third attempt.

Perhaps most revealing of Ceco's lack of knowledge or awareness of impending collapse, however, is the fact that Gonzales and Cisneros were working directly below the boom of the crane when the accident occurred.[2]  Both Ceco employees were injured when the crane collapsed, Cisneros quite seriously.  The collapse fractured Cisneros's right leg, permanently reducing its length by three to four inches.  I find it extraordinary that Gonzales and Cisneros would direct Greathouse to lift the load if either had any inkling that the crane was likely to collapse.  For Gonzales and Cisneros to have done so, they would have subjected *themselves* to grave injury, including death.  The inference thus urged by Plaintiffs - that Ceco somehow knew, should have known, or was aware that the boom would collapse on that third attempt - is implausible.

### 3.  Voluntary Act or Omission Evincing a Conscious Disregard for the Likelihood of Injury

Finally, Plaintiffs have failed to demonstrate a voluntary act or omission by Ceco evincing a conscious disregard for the likehood that Greathouse would be injured. Plaintiffs contend in their response to the motion that (1) Cisneros and Gonzales repeatedly failed to correct obvious impediments preventing the lift; (2) directed Greathouse to "do the impossible" - essentially, "to lift the entire building with his crane," and (3) that the strain caused the crane boom to "bend like a banana, a clear indication that it could fail."

Assuming that the first two contentions are true, Plaintiffs fail to demonstrate "conscious disregard" by Ceco of a known likelihood that the crane would collapse. Although Cisneros and Gonzales failed to remove impediments that were preventing the lift and although Greathouse was, for all practical purposes, attempting to "lift the entire building" because the load was stuck, Plaintiffs have simply not provided any evidence that a 240-ton crane attempting such a task was likely to collapse.  Indeed, the crane had successfully performed the task numerous times prior to the accident and did not

---

[2]In fact, Cisneros and Gonzales were on the load as it was being lifted. (Greathouse Dep., Doc. 69-5, Ex. E:107, lines 21-25.)

collapse during its two unsuccessful attempts immediately preceding the collapse. On both of those occasions, the crane was also presumably "lifting the entire building." Without *objective* evidence indicating that the crane was likely to collapse, an inquiry into Ceco's *subjective* state of mind is superfluous.

Moreover, it was only after the accident when the investigation revealed that Greathouse was attempting to "lift the entire building." No evidence indicates that such information was known to Ceco *at the time of the accident or in the moments preceding the accident*, the period during which Ceco's mental state is relevant. In particular, it is doubtful that Cisneros or Gonzales, or anyone for that matter, knew the amount of weight (other than the weight of the load) that the crane was actually attempting to lift at the time of the accident.

As to the third contention, a sole observer noted that the crane appeared to be "bending like a banana" on the crane's second attempt at lifting the load and again on the third attempt just before the collapse. (McCorkle Dep., Doc. 71-4, Ex. D: 17-18.) Assuming this observation to be true, Plaintiffs have failed to demonstrate that Gonzales, Cisneros, or any other Ceco employee was aware that the crane was bending. It is the awareness and conscious disregard of the *defendant* which is at issue, not the observations of a sole observer in the distance. Again, it seems quite extraordinary that Gonzales and Cisneros would direct Greathouse to lift the load, notwithstanding their own knowledge that the crane was "bending like a banana," and risk serious injury to themselves. I find such an inference to be far-fetched.

Finally, even assuming that Gonzales and Cisneros knew that the crane was bending on the second attempt, the crane notably did not collapse. A 240-ton crane is presumably engineered to withstand significant forces. Plaintiff has provided no evidence indicating that Gonzales, Cisneros, or any other Ceco employee for that matter was aware of, knew, or consciously disregarded a likely risk that the crane would collapse. In addition, Plaintiff has provided no information that would indicate a clear and present or imminent danger that a crane, even when bending, is likely to collapse or that Ceco consciously disregarded that risk. Judge and jury are ill-equipped to

understand the dynamics of a crane's design and functioning without some guidance. Plaintiffs have failed to provide that guidance.

### 4. Decisional Authorities

My finding that Ceco was not grossly negligent as a matter of law is supported by decisional authorities. In Merryman v. Mattheus, 529 So.2d 727 (Fla. 2d DCA 1988), the issue was whether the trial court erred in concluding as a matter of law that the defendants were not grossly negligent when a load of steel dropped from a malfunctioning crane and killed an employee.

Defendants in Merryman had been advised by an electrical contractor that the crane's limit switch, a part designed to limit the height of the crane, was functioning only intermittently and had to be replaced. Id. at 728. Defendants also knew that the switch had malfunctioned several days before the accident, causing a load to drop. Id. The contractor did not recommend that the crane not be used; rather, he advised defendants to use the crane with caution and to insure that its loads were not lifted too high. Id. Both the crane operator and decedent were so advised. Id. Defendants permitted continued use of the crane. Id. The accident occurred when the crane operator lifted a load higher than necessary and the limit switch malfunctioned, causing the crane's block to come into contact with the cable drum and sever the cable that was securing the load. Id.

Plaintiff in Merryman "vigorously" argued that Defendants were grossly negligent because the condition of the crane was extremely dangerous and Defendants knew of that condition but nevertheless permitted continued operation of the crane. Id. The Florida Second District Court of Appeal disagreed:

> The record shows that the crane, if operated properly, would have operated safely. If so operated, there was no clear and present danger. There was danger from the circumstances only if the crane operator disregarded the admonition to use the crane with caution and was negligent in lifting the load too high and the intermittently operating limit switch malfunctioned. The danger was, therefore, no more than a possibility, and [Defendants], by permitting the continued use of the crane,

> were not shown to have evinced such conscious disregard for the decedent's safety as is requisite for a finding of gross negligence on their parts. Their conscious disregard of the possibility of danger could under these circumstances be no more than simple negligence.

Id. at 728-29.

Thus, despite (1) the existence of a defect in the crane; (2) knowledge of that defect by Defendants; and (3) notice that the crane had malfunctioned before, the Merryman court held that Defendants were not grossly negligent as a matter of law. Here, the facts are even less robust for Plaintiffs than they were for the plaintiffs in Merryman. Plaintiffs do not allege that the crane was defective[3]; do not allege that Ceco had knowledge of any defect; and do not allege that the crane had malfunctioned or collapsed before the accident. Thus, Ceco is less culpable, if at all culpable, than were Defendants in Merryman.

Plaintiffs attempt to distinguish Merryman. They contend that the danger here, unlike the scenario in Merryman, was more than simply a "possibility." I disagree. In Merryman, the crane was not only defective but had malfunctioned previously *because* of that defect. More importantly, the malfunction had *caused* the crane to drop the load it was carrying, a scenario that was *identical* to that which actually *caused* the death of the deceased. Surely, if the facts in Merryman amounted to "no more than a possibility" of danger, a case such as this one which does not involve a crane defect; which does not involve any previous malfunction of the crane; and which certainly does not involve a history of the same type of malfunction that caused the accident, Plaintiffs' characterization of the risk of danger as something more than a "possibility" is inaccurate.

In Jones v. Robinson, 618 So.2d 279 (Fla. 3d DCA 1993), a Florida appellate court again held that Defendant was not grossly negligent as a matter of law. Id. at 279.

---

[3] Even if the crane were defective, Ceco did not manufacture or supply the crane and would not have been responsible for the defect, unlike the defendants in Merryman. In fact, it was Greathouse's employer, Brasfield and Gorrie, which supplied both the crane and the crane operator pursuant to contract.

In so doing, the Florida Third District Court of Appeal reversed a jury verdict in favor of Plaintiff; held that Defendant's motion for directed verdict should have been granted; and remanded the case to the trial court with directions to enter judgment in favor of Defendant. Id.

In Jones, the plaintiff, a stunt double, was hurled several feet, clothes ablaze, suffering serious and permanent injuries after a special effects professional prematurely detonated a simulated explosion. Id. at 280. Defendant and Plaintiff's expert witness both testified that the special effect was one that could cause serious injury; accordingly, the explosive device should not have been detonated unless Defendant was one hundred percent certain that it was safe to do so. Id. Despite his awareness of potential danger and his admission that he was uncertain of Plaintiff's location upon detonation, Defendant exploded the device. Id. The court held that although Defendant was "undoubtedly negligent," the negligence did not rise to the level of gross negligence as a matter of law. Id. at 279.

In case after case, even in those involving deaths and serious injuries, courts have not hesitated to grant summary judgment and directed verdicts in favor of defendants on the issue of gross negligence. See, e.g., Wright v. Edwards, 642 So.2d 808 (Fla. 2d DCA 1994) (trial court erred in denying defendant's motion for summary judgment on gross negligence claim; Defendant not grossly negligent as a matter of law where Plaintiff, who was riding on steel beam being hoisted by a crane, fell and sustained serious injuries after the beam became loose or tilted); Tomlinson v. Miller, 617 So.2d 811 (Fla. 5th DCA 1993) (summary judgment on gross negligence claim proper where Plaintiff suffered injuries from abduction and rape while employed at store in isolated area; evidence failed to establish "clear and present risk of injury to her"); Langton v. De Cenzo, 592 So.2d 318 (Fla. 3d DCA 1991) (trial court erred in denying defendant's motion for directed verdict on issue of gross negligence in death of employee); Mirabal v. Cachurra Corp., 580 So.2d 285 (Fla. 3d DCA 1991) (co-employee did not act with gross negligence in connection with worker's electrocution and was thus statutorily immune from liability); Hoyt v. Corbett, 559 So.2d 98 (Fla. 4th DCA 1990) (trial court erred in failing to direct verdict in defendant's favor on issue of gross

negligence for employee's death by electrocution; defective electrical cord was used despite defendant employee's instruction that it not be used and repaired; although use of ground fault interceptor would have prevented accident, accident could also have been prevented if deceased employee had worn his safety gloves as instructed by defendant employee); Weller v. Reitz, 419 So.2d 739 (Fla. 5th DCA 1982) (co-employee was guilty of simple negligence at most but not gross negligence as a matter of law when Plaintiff was pinned to the wall by a truck, causing both of his legs to break, even though Defendant co-employee had started the truck without knowing what gear it was in, without first getting into the truck, and without checking to see if the brake was on). See also Universal Servs. Co., Inc. v. Ung, 904 S.W.2d 638 (Tex. 1995) (evidence was insufficient to support jury's finding that employee's death while working with cleaning crew alongside interstate highway was result of gross negligence on part of employer, notwithstanding that employee was killed when truck hit pothole and that employer knew about pothole as a result of prior accident).

These cases demonstrate the onerous burden on plaintiffs to satisfy the stringent requirements of a gross negligence claim. Plaintiffs offer little authority in support of their claim for gross negligence. Plaintiffs cite to decisions holding that in ambiguous situations, it is proper that a jury determine whether the alleged negligence is simple or gross. See Boyce v. Pi Kappa Alpha Holding Corp., 476 F.2d 447, 451 (5th Cir. 1973); Courtney v. Florida Transformer, Inc., 549 So.2d 1061, 1065 (Fla. 1st DCA 1988); Hodges v. Helm, 222 So.2d 418, 420 (Fla. 1969); Foy v. Fleming, 168 So.2d 177, 179 (Fla. 1st DCA 1964); Carraway v. Revell, 116 So.2d 16, 22 (Fla. 1959). While I do not quarrel with these authorities, I find them to be unpersuasive in this case because the facts are clearly insufficient to support a jury finding of gross negligence.

The sole substantive decision offered by Plaintiffs in support of their claim for gross negligence is Livingston v. H.I. Family Suites, Inc., 2006 WL 1406587 (M.D. Fla. 2006). In Livingston, a family incurred injuries from "bed bug" bites allegedly received while staying as guests at a Holiday Inn hotel. The court denied the hotel's motion for summary judgment on the issue of gross negligence. The court found that a jury could reasonably infer (1) that imminent or clear and present danger existed that the family

would suffer injury ("bed bugs are known to carry disease and bite and suck blood from people"; the family witnessed insects in the room where they were staying); (2) that the hotel was aware of that danger (Holiday Inn rented the room to the family even after it learned that the hotel was infested with insects; the hotel's "Insect Log" indicated that just fifteen days prior to the family's arrival, a guest had complained of insect infestation in the exact room where the family stayed); and (3) that the hotel consciously disregarded the likelihood of injury (hotel staff had noted four times that the seventh floor on which the family stayed was infested). Id. at *5-*7.

Thus, the decision to deny the hotel's motion for summary judgment in Livingston was obvious. Livingston is not this case. Plaintiffs here have failed to establish genuine issues of material fact on any of the three elements required for gross negligence. In addition, I find it revealing that the sole decision Plaintiffs offer in support of their opposition to the pending motion for summary judgment in this crane accident case is a decision involving "bed bug" bites at a Holiday Inn.

Having considered the facts, the narrow construction of the exceptions to the Workers' Compensation Law as required by the Supreme Court of Florida, the requirements for a finding of gross negligence, and the applicable decisional authorities, I find that Plaintiffs have failed to demonstrate that Ceco was grossly negligent as a matter of law. A genuine issue of fact exists only on the issue of whether Ceco was guilty of simple negligence, a question that is wholly irrelevant to this case. I further find that the claim for loss of consortium, because it is derivative of the underlying claim for gross negligence, also fails. See Faulkner v. Allstate Ins. Co., 367 So. 2d 214, 217 (Fla. 1979) (citing Gates v. Foley, 247 So. 2d 40 (Fla. 1971)); AC&S, Inc. v. Redd, 703 So. 2d 492, 493-94 (Fla. 3d DCA 1997).

## CONCLUSION

1. Defendant's Motion for Summary Judgment (Doc. 69) is **granted**.

2. The clerk shall enter judgment dismissing Plaintiffs' claims **with prejudice**.

3. The clerk shall close the file.

    **ORDERED** on February 23, 2007.

                                      /s/ Richard Smoak
                                      **RICHARD SMOAK**
                                      **UNITED STATES DISTRICT JUDGE**